**NOT RECOMMENDED FOR PUBLICATION**
File Name: 09a0322n.06
Filed: May 6, 2009

**No. 08-4154**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| MOHAMED BEKHIT, | ) |
| | ) |
| Petitioner, | ) |
| | ) PETITION FOR REVIEW OF AN |
| v. | ) ORDER OF THE BOARD OF |
| | ) IMMIGRATION APPEALS |
| | ) |
| ERIC H. HOLDER, JR., United States Attorney | ) |
| General, | ) |
| | ) |
| Respondent. | |

Before: SILER, GILMAN, and KETHLEDGE, Circuit Judges.

**SILER**, Circuit Judge. Mohamed Bekhit appeals the decision of the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ") and denying his petition to remove the conditional basis of his lawful permanent resident status because his marriage to Teresa Lauren Huss was not bona fide. He argues that the BIA erred in finding that he failed to object to the introduction of improper evidence; he was deprived of his constitutional right to due process of law because he could not question a material witness and the IJ improperly considered unreliable hearsay evidence; and the IJ improperly considered post-marriage conduct. For the following reasons, we **DENY** the petition for review.

**I. BACKGROUND**

No. 08-4154
Bekhit v. Holder

Bekhit, a native and citizen of Egypt, entered the United States in 1997 as a nonimmigrant with authorization to remain until June 1998. In August 2001, he received conditional permanent resident status based on his marriage to Teresa, a United States citizen. In 2003, Bekhit and Teresa jointly filed a Form I-751 to remove the conditional status. In 2004, the United States Citizenship and Immigration Service ("USCIS") determined that their marriage was a "sham" and terminated Bekhit's permanent resident status.

At a removal hearing before the IJ, Bekhit claimed that he moved from Egypt to Greece in 1994, where he obtained legal status after marrying a Greek citizen. There, he met an Egyptian woman named Zizi. In 1997, he divorced and moved to the United States. Zizi later came to the United States and located him. In 1999, he had his first child with Zizi and met Teresa. In January 2001, he had his second child with Zizi and then married Teresa. He started having marital problems eight or nine months later. He admitted that his relationship with Zizi may have been partially to blame. He lived only with Teresa from 2001 until the beginning of 2003, and he lived on and off with Teresa and Zizi for the rest of 2003 and 2004. In May 2003, he and Teresa filed a joint Form I-751 that did not list his two children with Zizi. In 2004, he moved out of Teresa's house for the last time in April; had his third child with Zizi in June; and moved to Jackson, Tennessee, with Zizi and without Teresa in July. In December 2004, after living apart for several months, he and Teresa were separately interviewed about their marriage in relation to the joint Form I-751. In November 2005, he had another child with Zizi. He and Teresa are divorced, and he still lives in Jackson with Zizi and his four children.

The IJ denied Bekhit's petition to remove the conditional basis of his lawful permanent resident status and ordered removal to Egypt. The IJ found that Bekhit's marriage was not bona fide. The IJ noted that Bekhit's testimony was "unconvincing," the timeline of events showed "how insubstantial the marriage to Teresa was," neither Teresa nor Zizi testified about their relationship with Bekhit, and the case "reeks of fraud."

The BIA dismissed Bekhit's appeal, finding (1) no error in the IJ's determination that the Government "sustained its burden of establishing that the information in [Bekhit's] Form I-751 was not true and that [Bekhit] had entered into a marriage for the purpose of evading the immigration laws" and (2) no clear error in the underlying factual findings. In response to Bekhit's arguments that the Notice of Termination and supporting interview notes were improperly admitted or considered, the BIA reasoned that the IJ was required to review the Notice of Termination (*i.e.*, the termination decision that Bekhit was appealing) and was permitted to admit the supporting interview notes because both documents were "clearly relevant and material"; Bekhit's counsel did not object to the reliability of the documents, even though he had the opportunity to do so; there was no "showing of specific disagreement with the accuracy of the interview" that would necessitate cross-examination; and Bekhit did not persuasively challenge the authenticity or accuracy of either document. It also noted that his testimony revealed the same information as the Notice of Termination and found that he was not denied due process because he "received a full and fair hearing, on the merits of his claim, . . . was represented by counsel and afforded the opportunity to present, examine, and object to evidence that affected his claim," and he failed to demonstrate prejudice. In response to Bekhit's argument that the IJ improperly considered post-marriage

conduct, the BIA found that "the conduct of the parties after the marriage is relevant to their intent at the time of marriage."

## II. JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction to review a final order of removal under 8 U.S.C. § 1252. "Where, as here, the BIA adopts and affirms the IJ's opinion, but provides additional reasons for its ruling, we review the IJ's opinion as well as the BIA's additional reasons." *Zoarab v. Mukasey*, 524 F.3d 777, 780 (6th Cir. 2008). We reverse only if the evidence "not only supports a contrary conclusion, but indeed *compels it*." *Fang Huang v. Mukasey*, 523 F.3d 640, 649 (6th Cir. 2008).

## III. DISCUSSION

If an alien has been granted conditional permanent resident status based on a marriage to a United States citizen, the alien and his spouse must petition for removal of the conditional status within ninety days of the second anniversary of obtaining that status. *Id.* at 648-649 (citing 8 U.S.C. § 1186a(a)(1), (d)(2)). After reviewing the petition and interviewing the spouses, the Attorney General ("AG") will determine whether the marriage "was entered into for the purpose of procuring an alien's admission as an immigrant." *Id.* at 649 (quoting 8 U.S.C. § 1186a(b)(1)). If the AG determines that the marriage was entered into for immigration purposes (or was not bona fide), the conditional permanent resident status will be terminated. *Id.*

The IJ found that the "Government has shown by [a preponderance of the evidence] that [Bekhit's] is not a bona fide marriage" based on his omission of vital information from various immigration petitions, his self-serving and unconvincing testimony, and the timeline of events leading up to and subsequent to his marriage. The BIA agreed, finding "no error in the [IJ's

decision] finding that [the Government] sustained its burden of establishing that the information in respondent's Form I-751 was not true and that the respondent had entered into a marriage for the purpose of evading the immigration laws." These findings are reasonable and supported by substantial evidence in the record, considered as a whole.

**A. Post-Marriage Conduct**

The IJ properly considered post-marriage conduct in finding that Bekhit's marriage was not bona fide. While the "central question" in determining the nature of a marriage is the parties' intent at the time of marriage, the conduct of the parties before and after marriage is relevant to determine that intent. *In re Soriano*, 19 I. & N. Dec. 764, 765-66 (BIA 1988) (citing *Lutwak v. United States*, 344 U.S. 604 (1953)).

**B. Evidentiary Rulings and Due Process**

Immigration proceedings are not subject to the Federal Rules of Evidence. *Hassan v. Gonzales*, 403 F.3d 429, 435 (6th Cir. 2005). The IJ "may receive in evidence any oral or written statement that is material and relevant to any issue in the case previously made by the respondent or any other person during any investigation, examination, hearing, or trial." 8 C.F.R. § 1240.7(a); *Dallo v. INS*, 765 F.2d 581, 586 (6th Cir. 1985). And, "we review evidentiary rulings by IJs only to determine whether such rulings have resulted in a violation of due process." *Hassan*, 403 F.3d at 435-36 ("Fifth Amendment guarantees of due process extend to aliens in [removal] proceedings, entitling them to a full and fair hearing.").

The IJ did not err in admitting into evidence the Notice of Termination and supporting interview notes. The BIA correctly found that both were "clearly relevant and material." Bekhit was

appealing the USCIS's decision to terminate his permanent resident status. To determine whether the USCIS properly denied the petition, it was appropriate for the IJ to admit and consider its decision as well as the underlying reasons. *See* 8 U.S.C. § 1186a(c)(3)(D). The BIA also correctly found that Bekhit could not challenge the reliability of the Notice of Termination or interview notes on appeal because his counsel did not object to their reliability at the hearing. *See Gill v. Gonzales*, 127 F. App'x 860, 863 (6th Cir. 2005) (finding that the petitioner was bound by the representation of his counsel to the IJ). Even though Bekhit's counsel objected to the admission of the documents at a master calender hearing, he did not object to their admission or reliability at the merits hearing when given the opportunity to do so.

The BIA correctly found that Bekhit was not denied due process of law and that he "received a full and fair hearing on the merits of his claim." Even though he alleged error, he failed to demonstrate that he was prejudiced by the claimed violations. The IJ did not reference or rely on the interview notes in reaching his conclusion, relying instead on Bekhit's testimony and immigration petitions. At the removal hearing, Bekhit did not object to the admission or reliability of the interview notes, dispute any of the information included in the interview notes, or request to cross-examine the interviewer. Further, his testimony supported, rather than contradicted, the contents of the interview notes. Thus, the admission of the interview notes was not "fundamentally unfair." *See Alexandrov v. Gonzales*, 442 F.3d 395, 406-07 (6th Cir.2006) ("[W]here a hearsay document is admitted but not primarily relied upon and the petitioner receives the opportunity to rebut the document's conclusions through his witnesses, the fundamental fairness of the proceedings has not

been impinged.").  As a result of his failure to show prejudice, his due process claims must fail.  *See*

*Warner v. Ashcroft*, 381 F.3d 534 539 (6th Cir. 2004).

**PETITION DENIED.**